UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VETERAN PAYMENT SYSTEMS, LLC, | ) ) ) | CASE NO. 5:14CV981 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| TIMOTHY A. GOSSAGE, et al., | ) ) | |
| DEFENDANTS. | ) | |

On March 28, 2014, plaintiff Veteran Payment Systems, LLC ("plaintiff" or "Veteran") filed the above-captioned action in the Stark County Court of Common Pleas against defendants, Timothy A. Gossage ("Gossage") and Mainstream Merchant Services, Inc. ("Mainstream"). (Doc. No. 1-1 ["Compl."].) All of plaintiff's claims relate, in one way or another, to the restrictive covenant Gossage purportedly became subject to during his employment with Veteran. Mainstream removed the action to this Court, on diversity grounds, on May 6, 2014.

The parties have filed a series of motions that are currently before the Court: (1) Mainstream's motion to dismiss for lack of personal jurisdiction (Doc. No. 4 ["Mainstream's Mot."]); (2) Gossage's motion to dismiss for want of personal jurisdiction (Doc. No. 8 ["Gossage's Mot."]); and (3) Veteran's motion to transfer venue (Doc. No. 13 ["Veteran's Mot."]). Veteran has filed an opposition brief to each defendant's motion (Doc. No. 9 ["Veteran's Opp'n to Mainstream's Mot."]; Doc. No. 12

["Veteran's Opp'n to Gossage's Mot."]), and Mainstream has filed a reply. (Doc. No. 10 ["Mainstream's Reply"].) Additionally, Mainstream has responded to Veteran's motion (Doc. No. 14 [Mainstream's Resp. to Veteran's Mot."]).

I. **BACKGROUND**

Veteran "is a Delaware limited liability company with its business office . . . in Alliance, Stark County, Ohio[]" and is "in the business of providing credit card processing services for merchants." (Compl. ¶ 2.) Mainstream is "a foreign corporation with its principal office" in Alpharetta, Georgia and is also "in the business of providing merchants with services to process credit card transactions." (*Id*. ¶ 4.) Gossage is a private citizen and "a resident of North Carolina[.]" (*Id*. ¶ 3.)

According to the complaint, on April 26, 2011, Gossage "entered into an Area Manager Employment Agreement" with Veteran that governed various aspects of Gossage's employment and the treatment of Veteran's confidential information. (*Id*. ¶ 7, Ex. 1 ["employment agreement"].) The employment agreement provided, in part, that, for a period of three years after the termination of his employment, Gossage was not to divert any business from Veteran "with any customer with whom Gossage had contact while employed by" Veteran, and that, for a period of two years after his separation, he was not to solicit any of Veteran's customers. (*Id*. ¶ 10.)

Particularly relevant to the pending motions, the employment agreement contained a forum selection clause that provided:

> **Interpretation and Jurisdiction**. This Agreement shall be exclusively governed by and construed according to the laws of the State of Ohio. The parties agree that any action or proceeding, whether in law or in equity, brought under this Agreement or for a cause of action arising under this Agreement, shall only be brought in the appropriate state or federal courts

of the County of Alliance, Ohio, which courts shall have exclusive jurisdiction to hear such matters. The parties waive, to the fullest extent they may do so, the defense of forum non conveniens.

(Employment agreement at 37, bolding in original.)[1]

Veteran "terminated Gossage from employment 'for cause' by on or about June 5, 2013 based upon Gossage's failure and refusal after request" to return to Veteran certain confidential information. (Compl. ¶¶ 11-12.) Veteran now claims that, "[s]ince the termination of his employment, Gossage had breached" the employment agreement by "failing to protect and by using" Veteran's confidential information "to pursue self-serving business relationships" with Veteran's merchants, "failing and refusing to return" to Veteran its confidential information, and by "soliciting and diverting [Veteran's] customers with whom Gossage had contact with while employed by" Veteran. (*Id*. ¶ 13.) With respect to Mainstream, Gossage's new employer, Veteran alleges that it "intentionally and wrongfully employed Gossage and participated with Gossage to solicit and divert [Veteran's] merchants for the self-serving purpose to deprive [Veteran] of a contractual right to a revenue stream" that would have flowed from the processing of these merchants' credit card transactions. (*Id*. ¶¶ 14, 36.) Veteran raises claims for breach of contract (restrictive covenant) against Gossage, and wrongful interference with contract (willful misconduct) and unjust enrichment against Mainstream. Veteran also seeks an accounting, disgorgement of profits from Mainstream, and injunctive relief.

Mainstream has moved to dismiss the complaint, maintaining that this Court lacks personal jurisdiction over it. While acknowledging some "limited contacts

---

[1] All page numbers are to the page identification number generated by the Court's electronic docketing system.

with Ohio" and the servicing of "a limited number of accounts in Ohio," Mainstream underscores the fact that "plaintiff's claims do not arise out of those contacts." (Mainstream's Mot. at 75.) It further argues that the forum selection clause, contained in Gossage's employment agreement, cannot be used to manufacture jurisdiction against it, a non-party to the agreement. (Mainstream's Reply at 243-45.) According to Mainstream, "the only connection this case has to the State of Ohio is the fact that Gossage was previously employed by plaintiff, an Ohio company, and it is convenient for Veteran to litigate here." (Mainstream's Mot. at 73.)

*Pro se* defendant Gossage has also moved to dismiss on personal jurisdiction grounds. Gossage acknowledges the existence of the forum selection clause in the employment agreement, but he discounts it, explaining that he "do[es] not recall having any understanding of this clause when [he] signed the contract. In reading it now, [he] do[es] not understand that clause to be an agreement on [his] part that the courts in Ohio will have personal jurisdiction over [him]." (Doc. No. 8-1 [Gossage Decl.] at 202.) In a sworn affidavit appended to his motion, Gossage also avers, in part, that he is "not able financially to defend this lawsuit in Ohio based on the expense of travel alone." (*Id*.)

In response to Gossage's dispositive motion, Veteran filed a motion, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the United States District Court for the Middle District of North Carolina—Greensboro. It is Veteran's position that Gossage's complaints regarding the expense and inconvenience of defending an action in this judicial district "sound as a motion to dismiss or transfer for *forum non conveniens*." (Veteran's Mot. at 354, italics in original.) Veteran insists that a § 1404(a) transfer to the district court in Greensboro, North Carolina will resolve Gossage's concerns about the

4

inconvenience of litigating this matter so far from home, while providing a forum where personal jurisdiction clearly exists as to Mainstream. (*Id*. at 356-60.)

"Mainstream does not oppose a transfer of venue, but for reasons different than set forth" by Veteran. (Mainstream's Resp. to Veteran's Mot. at 378.) Because it believes that this Court cannot exercise personal jurisdiction over it, Mainstream argues that § 1404(a) cannot be used to effectuate the transfer. Instead, Mainstream suggests that the Court must look to 28 U.S.C. §§ 1406(a) or 1631. (*Id*. at 379.) Thus, the parties agree that a transfer is advisable, but simply disagree as to the proper statutory vehicle.

## II. ANALYSIS

The authority to transfer venue lies in 28 U.S.C. §§ 1404(a) and 1406(a). Section 1404(a) permits a transfer to any district where the case could have been brought originally for "the convenience of parties and witnesses" and in the "interest of justice[.]" Section 1406(a) also enables a district court to transfer venue "in the interest of justice" when venue is improper in the original forum to "any district or division in which it could have been brought." While a transfer under § 1404(a) may not be granted when a court lacks jurisdiction over a defendant, *Pittock v. Otis Elevator Co*., 8 F.3d 325, 329 (6th Cir. 1993) (citing *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980)), § 1406(a) does not require a district court to have personal jurisdiction over the defendants before transferring the case. *See Flynn v. Greg Anthony Constr. Co., Inc.*, 95 F. App'x 726, 739 (6th Cir. 2003); *Martin v. Stokes*, 623 F.2d 469, 471 (6th Cir. 1980); *see, e.g., Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962).

"Thus, the existence of personal jurisdiction over a defendant, or lack thereof, determines the proper statute under which a court may grant a transfer of venue."

5

*Global Crossing Telecomm., Inc. v. World Connection Grp, Inc*., 287 F. Supp. 2d 760, 764 (E.D. Mich. 2003). Consequently, the Court must ascertain whether it can exercise jurisdiction over defendants before it can determine whether transfer is appropriate. *See Leroy v. Great W. United Corp*., 443 U.S. 173, 180, 99 S. Ct. 2710, 61 L. Ed. 2d 464 (1979) ("The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum."); *see generally Martin*, 623 F.2d at 474 ("The law in this Circuit, therefore, is that § 1406(a) provides the basis for any transfer made for the purpose of avoiding an obstacle to adjudication on the merits in the district court where the action was originally brought. That defect may be either improper venue or lack of personal jurisdiction. This construction of § 1406(a) necessarily limits the application of § 1404(a) to the transfer of actions commenced in a district court where both personal jurisdiction and venue are proper."); *see, e.g., Costaras v. NBC Universal, Inc.*, 409 F. Supp. 2d 897 (N.D. Ohio 2005) (addressing personal jurisdiction before venue).

A. **Personal Jurisdiction over Defendants**

The Due Process Clause requires that the non-resident defendant have such sufficient minimum contracts with the forum state that "finding personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Conn v. Zakharov*. 667 F.3d 705, 712 (6th Cir. 2012) (quotation marks and citations omitted). Two kinds of personal jurisdiction nestle under the Due Process clause: general jurisdiction and specific jurisdiction. *Id.* at 718 (citations omitted). As explained below, only specific jurisdiction—wherein plaintiff's claims arise out of or relate to a defendant's contacts

6

with the forum state—is at issue in this case.

Because this is a diversity case, personal jurisdiction will be ultimately established by state law. *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980), *cert. denied*, 450 U.S. 981, 101 S. Ct. 1517, 67 L. Ed. 2d 816 (1981). In Ohio, personal jurisdiction may be established by minimum contacts with the state as defined in Ohio Rev. Code § 2307.382, the state's long arm statute, which states, in pertinent part, as follows:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

    (1) Transacting any business in this state;

    (2) Contracting to supply services or goods in this state;

    (3) Causing tortious injury by any act or omission in this state;

    (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business . . . in this state;

    (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state . . .

    (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons . . .

    (7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state. . .

    (8) Having an interest in, using, or possessing real property in this state;

    (9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

> \*\*\*
> (C)   When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

Ohio Rev. Code § 2307.382; *Pittock*, 8 F.3d at 327.

*1. Defendant Gossage*

As a resident of North Carolina, Gossage insists that this Court cannot exercise personal jurisdiction over him, underscoring the following facts: (1) that he has not performed any services for plaintiff or Mainstream in the State of Ohio, (2) that he has not "solicited or sold a single merchant account in the State of Ohio[,]" (3) that he signed his employment contract with plaintiff in North Carolina, (4) that he has never maintained a residence or telephone number or owned property in Ohio, and (5) that he has never conducted any business in Ohio. (Gossage Decl. at 201-02.) Plaintiff does not seriously dispute the limited nature of Gossage's contacts with the State of Ohio, and, instead, relies primarily upon the forum selection clause in Gossage's employment agreement.

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982). "[T]here are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court system. The use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court." *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) (quotation marks and citations omitted); *see Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 472 n.14, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (personal jurisdiction requirement may be waived through forum selection clause in contract); *Kennecorp Mortg. Brokers, Inc. v. Country Club Convalescent Hosp., Inc*., 610 N.E.2d 987, 989 (Ohio 1993).

"Federal courts hold that forum selection clauses that have been freely bargained for are *prima facie* valid and enforceable." *Diebold, Inc. v. Firstcard Fin. Servs., Inc*., 104 F. Supp. 2d 758, 763 (N.D. Ohio 2000) (citation omitted). Even in the employment setting, where the parties may not have equal bargaining power and the employee may not be a sophisticated business person, courts have enforced such clauses absent fraud or manifest injustice. *See, e.g., Shingler v. Smile Care, LLC*, No. 1:14CV725, 2014 WL 3543800 (N.D. Ohio July 17, 2014) (enforcing forum selection clause in employment agreement); *but see Buckeye Check Cashing of Ariz., Inc. v. Lang*, No. 2:06-CV-792, 2007 WL 641824 (S.D. Ohio Feb. 23, 2007) (declining to enforce a forum selection clause in an employment contract where employee was not informed of clause until after forced to resign former job and re-apply for new position). As such, "[a] forum selection clause should be upheld absent a strong showing that it should be set aside." *Wong v. PartyGaming Ltd*., 589 F.3d 821, 828 (6th Cir. 2009) (citation omitted).

In *Wong*, the Sixth Circuit identified the following factors to be considered in evaluating the enforceability of a forum selection clause:

> whether the clause was obtained by fraud, duress, or other unconscionable means; whether the designated forum would ineffectively or unfairly handle the suit; and whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust.

*Id*. (numerals and citations omitted). Gossage has failed to even suggest, let alone

establish, that the clause was the result of fraud, duress, or other unconscionable means, or that this Court would unfairly adjudicate this action.

The third factor requires a showing that "enforcement of the clause would be so inconvenient . . . that its enforcement would be unjust or unreasonable." *Wong*, 589 F.3d at 829 (citing *Assocs. of Urology*, 453 F.3d at 722-23). "This finding must be based on more than mere inconvenience of the party seeking to avoid the clause." *Id*. Gossage bears the burden of demonstrating that it would be unreasonable or unjust to enforce the forum selection clause. *Buckeye Check Cashing of Ariz.*, 2007 WL 641824, at *7 (citation omitted). Such a showing requires a demonstration that "enforcement of the clause would be 'manifestly and gravely inconvenient' to the party seeking to avoid enforcement such that it will 'effectively be deprived of a meaningful day in court[.]'" *Id*. (citations omitted).

Gossage insists that he is "nearly bankrupt" and does not have the funds to litigate this action so far from his home. He also suggests that it is unfair for him to have to do so when his only connection to Ohio—aside from the forum selection clause he acknowledges that he signed—is that his former employer maintains its headquarters in Ohio. (Gossage Decl. at 202.) This representation falls short. "Mere distance, mere expense, or mere hardship to an individual litigant is insufficient to invalidate a forum selection clause." *Buckeye Check Cashing of Ariz.*, 2007 WL 641824, at *7 (citations omitted); *see Estate of Thomas v. CIMSA Ingenieria de Sistemas*, No. 5:11CV1960, 2012 WL 5335277, at *4 (N.D. Ohio Oct. 26, 2012) (citation omitted). Moreover, the Court finds Gossage's self-serving statement that he did not understand the plainly worded language in the clause insufficient to overcome the *prima facie* validity of the clause.

Accordingly, the Court concludes that Gossage has, via a valid and enforceable forum selection clause, waived the requirement that the Court have personal jurisdiction over him.[2]

   *2. Defendant Mainstream*

It is Veteran's position that this Court can exercise personal jurisdiction over Mainstream because it is an unlicensed corporation doing business in Ohio. Alternatively, Veteran posits that the forum selection clause contained in Gossage's employment agreement, which Veteran notes was executed in Ohio and purportedly is the basis for its claims against both defendants, supplies the Court with the necessary jurisdiction over Mainstream. Neither argument has merit.

While Mainstream concedes that it "has a small number of accounts in Ohio," which it estimates represent less than two percent of its accounts portfolio and less than one percent of its net income, it is undisputed that none of the Ohio accounts previously belonged to Veteran or were procured for Mainstream by Gossage. (Mainstream's Mot. at 72 [citing Doc. No. 4-2, Vignale Decl. at 80]; *see* Gossage Decl. at 201.) Ohio law does not permit the exercise of general jurisdiction. *Conn*, 667 F.3d at 717-18 ("under Ohio law, a court may exercise personal jurisdiction over a non-resident defendant only if specific jurisdiction can be found under one of the enumerated bases in

---

[2] In so ruling, the Court observes that the forum selection clause incorrectly states that actions on the employment agreement may be brought in "appropriate State or federal courts of the County of Alliance, Ohio." (*See* employment agreement at 37.) There is no such county in Ohio. Alliance is, however, a city in Stark County, Ohio, the county in which this action was original brought. (*See* Notice of Removal, Doc. No. 1.) Defendants did not raise the issue of whether this error invalidates the forum selection clause and the argument is, therefore, waived. Even if this Court were to find that the forum selection clause was unenforceable and, additionally, that this Court did not have personal jurisdiction over Gossage, the Court could and would transfer Gossage's claims under § 1406(a).

Ohio's long-arm statute"); *Am. Energy Corp. v. Am. Energy Partners*, Case No. 2:13-cv-886, 2014 WL 1908290, at *5 (S.D. Ohio May 9, 2014); *Puronics, Inc. v. Clean Resources*, *Inc.*, No. 5:12-CV-01053, 2013 WL 149882, at *4, n.3 (N.D. Ohio Jan. 14, 2013). Therefore, these contacts that are unrelated to plaintiff's claims cannot support a finding of personal jurisdiction.

Additionally, the alleged fact that Mainstream may be an unregistered foreign corporation doing business in Ohio cannot supply the necessary personal jurisdiction. It is true that an unlicensed foreign corporation doing business in the State of Ohio may not maintain an action in Ohio until it has obtained a license. Ohio Rev. Code § 1703.29(A). There is nothing in the Ohio statute, however, that provides that the failure of a foreign corporation to obtain a license to do business in the state will subject the business to the jurisdiction of the Ohio courts. Moreover, Ohio's long arm statute does not include failure to be licensed in Ohio as a basis for the exercise of personal jurisdiction. *See* Ohio Rev. Code § 2307.382(A).

Plaintiff also, however, looks to the forum selection clause in Gossage's employment agreement to satisfy specific jurisdiction over Mainstream, arguing that "[i]t is the foregoing contract entered into with Veteran in Ohio that gives rise to Veteran's claims against Mainstream." (Veteran's Opp'n. to Mainstream's Mot. at 208.) Mainstream resists this argument, underscoring the fact that it was not a signatory to the agreement, and cannot, therefore, be held to its terms.

There is support in the law for non-parties to be bound by forum selection clauses contained in contracts. Specifically, a non-signatory to a forum selection clause may be bound if the non-signatory is "closely related" to the contracting parties or

dispute, such that it was "'foreseeable' that it will be bound[.]" *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997) (citation omitted). Plaintiff argues that Gossage is Mainstream's agent, and, as such, Mainstream has a sufficiently close relationship to the contracting parties and dispute such that it was foreseeable that it would be haled into court in Ohio. (Veteran's Opp'n. to Mainstream's Mot. at 215-16.)

Courts within the Sixth Circuit have focused on different considerations in evaluating the "closely related" requirement for enforcement of a forum selection clause against non-signatories. Some courts have looked to whether the non-signatory directly benefited from the agreement. *See ThorWorks Indus. v. E.I. DuPont de Nemours and Co.*, 606 F. Supp. 2d 691, 697 (N.D. Ohio 2008) (finding that licensing agent was not bound by a forum selection clause between licensee and licensor where agent did not benefit from agreement). Other courts have focused on the legal relationship between the parties and the non-signatory, considering whether the non-signatory was an agent, corporate officer, subcontractor, or guarantor of a contracting party. *See Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*, No. 5:09-CV-2613, 2011 WL 711568, at *11 (N.D. Ohio Feb. 22, 2011) (non-party to service maintenance agreement was not bound by the agreement's forum selection clause where non-signatory did not stand in an agency relationship with either party to the agreement); *Highway Commercial Servs., Inc. v. Zitis*, No. 2:07-CV-1252, 2008 WL 1809117, at *4-5 (S.D. Ohio Apr. 21, 2008) (finding no agency or other intimate relationship binding non-party to lease agreement's forum selection clause); *but see H.H. Franchising Sys., Inc. v. Klaits*, No. 1:12CV709, 2014 WL 1308505, at *2 (S.D. Ohio Mar. 31, 2014) (holding that company was not bound by a forum selection clause in a franchise agreement that it did not sign, even

though the agreement was signed by its sole member in his individual capacity).

Ultimately, however, the analysis comes down to whether the non-signatory should have reasonably foreseen that it might be required to defend an action in a court in Ohio. As one district court explained:

> In sum, it is clear from [a review of relevant cases] that courts considering this question of whether a non-signatory may be bound by a forum selection clause take a common sense, totality of the circumstances approach that essentially inquiries into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause. . . [T]his approach places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute.

*Regions Bank v. Wyndham Hotel Mgmt., Inc*., No. 3:09-1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010) (assignee was closely related to parties to a hotel management agreement so as to be bound by the agreement's forum selection clause).

Applying a common sense, totality of the circumstances approach to the present situation, the Court finds that Mainstream should not be bound by the forum selection clause. Mainstream employed Gossage, a North Carolina resident, to acquire accounts in North Carolina. Mainstream was likely aware of Gossage's prior employment with Veteran, an Ohio-based corporation. It is undisputed, however, that Gossage did not solicit business in Ohio on behalf of Veteran. Thus, while Mainstream "likely knew it was risking just this sort of litigation with an Ohio company when it hired him[,]" it could not have reasonably foreseen that this litigation would necessarily take place in Ohio or that it would be bound by the forum selection clause in its new employee's contract with a former employer. *See, e.g., FirstMerit Corp. v. Craves*, No. 1:14-CV-02203, 2015 WL 151318, at *2 (N.D. Ohio Jan. 12, 2015) (forum selection clause in

employment agreement was not enforceable as against subsequent employer). The Court concludes that Mainstream is not bound by the forum selection clause, and that there is no basis upon which this Court can exercise personal jurisdiction over Mainstream.

B.  **Transfer Under 28 U.S.C. §§ 1404(a) and 1406(a)**

Because the Court finds that defendant Gossage is subject to *in personam* jurisdiction in Ohio but defendant Mainstream is not, the Court must utilize 28 U.S.C. § 1404(a) to consider the parties' request to transfer the claims against Gossage and 28 U.S.C. § 1406(a) to consider the request to transfer the claims against Mainstream. *See, e.g., J4 Promotions, Inc. v. Splash Dogs, LLC*, No. 08 CV 977, 2009 WL 385611, at *27 n.22 (N.D. Ohio Feb. 13, 2009) (applying § 1404(a) to properly venued claims and § 1406(a) for all other claims); *Brink v. Ecologic, Inc.*, 987 F. Supp. 958 (E.D. Mich. 1997) (transferring certain claims under § 1404(a) and others under § 1406(a)).

1.  *Transfer of the Claims against Gossage under § 1404(a)*

Under the § 1404(a) analysis, the Court must determine whether the action could have been brought in the proposed venue, which requires a showing that: (1) the proposed transferee court would have subject matter jurisdiction over the case; (2) venue would be proper in the proposed district; and (3) the defendants must be subject to personal jurisdiction there. *Travelers Cas. & Sur. Co. v. Phila. Reins. Corp.*, No. 3:01CV7058, 2001 WL 631328, at *5 (N.D. Ohio May 10, 2001). Like this Court, the Middle District of North Carolina would have subject matter jurisdiction over the case because Veteran is from a different state than both defendants, and Veteran has alleged damages of no less than $105,287.05. Thus, complete diversity of the parties and

damages in excess of the threshold amount would support the North Carolina district court's exercise of diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

Section 1391(b)(2) provides that a civil action may be brought in "a judicial district in which a substantial part of the events giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b)(2). The parties agree that Mainstream hired Gossage, a resident of North Carolina, to offer credit card transaction services to be performed for merchants located in North Carolina. Accordingly, venue would be proper in the Middle District of North Carolina, and the action could have originally been brought in this alternative district.

The Court must next consider and weigh certain public and private interests. *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537-38 (6th Cir. 2002). "Private factors include: the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; the cost for obtaining attendance of willing witnesses; the possibility of inspecting the premises, if appropriate; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Sirak v. J.P. Morgan Chase & Co.*, No. 5:08CV169, 2008 WL 4845950, at *2 (N.D. Ohio Nov. 5, 2008) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)) (numerals omitted). "Public interest factors include: administrative difficulties of courts with congested dockets; the burden of jury duty on members of a community with no connection to the litigation; the local interest of having localized controversies decided at home; and the appropriateness of having diversity cases tried in a forum which is familiar with the governing law." *Id*. (citing *Gulf Oil Corp.*, 330 U.S. at 508) (numerals omitted). No one factor is dispositive; rather transfer is

appropriate if the balance of these factors weighs "strongly" in favor of transfer. *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998). "A Court need not extensively discuss each of the [aforementioned] factors, but should instead focus its analysis on those factors that are particularly relevant to a given transfer determination." *Krawec v. Allegany Co-Op Ins. Co.*, No. 1:08-CV-2124, 2009 WL 1974413, at *4 (N.D. Ohio July 7, 2009) (citations omitted).

A balance of the relevant factors favors transfer. There appears to be no dispute that Gossage, and most of the merchants he is alleged to have solicited on behalf of Mainstream, are located in North Carolina. (Mainstream's Mot. at 75; Vignale Decl. at 80; Gossage Decl. at 201; Veteran's Mot. at 354.) Because most of the material witnesses and the relevant financial documents that will constitute the bulk of the evidence in this case are located in North Carolina, consideration of the private factors dictates that a North Carolina trial would be comparatively easy, expeditious, and inexpensive. Additionally, because most of the underlying credit card transactions, for which Veteran believes that it was entitled to a processing fee, took place in North Carolina, most of the public factors would also favor a transfer. (Veteran's Mot. at 354.) While the North Carolina district court may be called upon to apply the law of Ohio to this action, that factor alone is not dispositive, and the transferee court is just as capable as this Court of applying the relevant state law to the present dispute. *See Cincinnati Ins. Co. v. O'Leary Paint Co., Inc.*, 676 F. Supp. 2d 623, 638 (W.D. Mich. 2009) (noting that "in the absence of any legal issues which seem complex, the necessity for either [federal] court to apply another State's law would not be a weighty factor" in the § 1404(a) analysis) (collecting

cases). Thus, the § 1404(a) analysis leads to the conclusion that the interest of justice supports a transfer of Veteran's claims against Gossage.

2. *Transfer of the Claims against Mainstream under § 1406(a)*

The same result is reached under § 1406(a) with respect to Veteran's claims against Mainstream. *See Eagle Mining, LLC v. Elkland Holdings, LLC*, Civil No. 14-105-ART, 2014 WL 3508017, at *2 (E.D. Ky. July 14, 2014) ("A court must balance similar considerations [as under § 1404(a)] when deciding whether to transfer a case pursuant to § 1406(a), and has broad discretion when doing so.") (citing *Stanifer v. Brannan*, 564 F.3d 455, 456-57 (6th Cir. 2009)). As previously observed, most of the underlying business transactions occurred in North Carolina, one of the defendants resides in North Carolina, and many of the material witnesses and financial records are located in North Carolina. It is also possible that some of these witnesses may be outside of this Court's subpoena power. Under these circumstances, the interest of justice is served by a transfer to North Carolina.[3]

**III. CONCLUSION**

For all of the foregoing reasons, the Court shall grant Veteran's unopposed motion to transfer. Veteran's claims against Gossage shall be transferred pursuant to 28 U.S.C. § 1404(a), and Veteran's claims against Mainstream shall be transferred pursuant to 28 U.S.C. § 1406(a). Defendants' motions to dismiss for want of personal jurisdiction

---

[3] Section 1631 also supports a transfer of these claims. It provides that when the court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought[.]" 28 U.S.C. § 1631. The Sixth Circuit has observed that §§ 1406(a) and 1631 are "similar provision[s]" that "confer broad discretion in ruling on a motion to transfer." *Stanifer*, 564 F.3d at 456-57.

will be denied as moot. This action is hereby ordered transferred to the United States District Court for the Middle District of North Carolina—Greensboro.

**IT IS SO ORDERED**.

Dated: February 10, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**